**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-02705-STV

T.B.W.,[1]

      Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

Chief Magistrate Judge Scott T. Varholak

      This matter is before the Court on Plaintiff T.B.W.'s Complaint seeking review of the Commissioner of Social Security's decision denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381-83c. [#1]  The parties have consented to proceed before this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. 636(c) and D.C.COLO.LCivR 72.2.  [#10]  The Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  This Court has carefully considered the Complaint [#1], the Social Security Administrative Record [#15], the parties' briefing [##16, 17], and the applicable case law, and has determined that oral argument would not materially assist in the disposition of this appeal.  For the following reasons, the Court **AFFIRMS** the Commissioner's decision.

_____

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

## I.      LEGAL STANDARD

### A.      Five-Step Process for Determining Disability

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[2]  42 U.S.C. § 1382c(a)(3)(A); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment."  *Lax*, 489 F.3d at 1084.  "In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility . . . , the Commissioner [ ] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. § 1382c(a)(3)(G).

"The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled."  *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005).  The five-step inquiry is as follows:

1. The Commissioner first determines whether the claimant's work activity, if any, constitutes substantial gainful activity;

---

[2] "Substantial gainful activity" is defined in the regulations as "work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 416.910; *see also* 20 C.F.R. § 416.972.

2

2. If not, the Commissioner then considers the medical severity of the claimant's mental and physical impairments to determine whether any impairment or combination of impairments is "severe;"[3]

3. If so, the Commissioner then must consider whether any of the severe impairment(s) meet or exceed a listed impairment in the appendix of the regulations;

4. If not, the Commissioner next must determine whether the claimant's residual functional capacity ("RFC")—*i.e.,* the functional capacity the claimant retains despite his impairments—is sufficient to allow the claimant to perform his past relevant work, if any;

5. If not, the Commissioner finally must determine whether the claimant's RFC, age, education and work experience are sufficient to permit the claimant to perform other work in the national economy.

*See* 20 C.F.R. § 416.920(a)(4); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Bailey v. Berryhill*, 250 F. Supp. 3d 782, 784 (D. Colo. 2017). "The claimant bears the burden of establishing a prima facie case of disability at steps one through four," after which the burden shifts to the Commissioner at step five to show that the claimant retains the ability to perform work in the national economy. *Wells v. Colvin*, 727 F.3d 1061, 1064 n.1 (10th Cir. 2013); *Lax*, 489 F.3d at 1084. "A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Ryan v. Colvin*, 214 F. Supp. 3d 1015, 1018 (D. Colo. 2016) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)).

**B.     Standard of Review**

In reviewing the Commissioner's decision, the Court's review is limited to a determination of "whether the Commissioner applied the correct legal standards and whether her factual findings are supported by substantial evidence." *Vallejo v. Berryhill*,

---

[3] The regulations define severe impairment as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

849 F.3d 951, 954 (10th Cir. 2017) (citing *Nguyen v. Shalala*, 43 F.3d 1400, 1402 (10th Cir. 1994)). "With regard to the law, reversal may be appropriate when [the Commissioner] either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards." *Bailey*, 250 F. Supp. 3d at 784 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). "It requires more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax*, 489 F.3d at 1084). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan*, 399 F.3d at 1261-62 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted). The Court, however, "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Hackett*, 395 F.3d at 1172.

## II.   BACKGROUND

Plaintiff was born in 1973.  [AR 189][4]  She completed one year of college.  [AR 195]  Plaintiff is able to communicate in English.  [AR 193]  On September 19, 2022, Plaintiff filed a Title XVI application for SSI.  [AR 179-88]  In the application, Plaintiff claimed a disability onset date of June 1, 2021, and thus was 48 years old at the time of the alleged onset.   [AR 180]   Plaintiff claims disability based upon fibromyalgia, diabetes, hypertension, high heart rate, depression, memory loss, anxiety, cervical degenerative spondylosis, chronic lymphocytic leukemia, and a cancerous cyst, amongst other conditions.  [AR 193]  Plaintiff last worked as a para-professional in a middle school in June 2021.  [AR 195]

### A.   Medical Background[5]

Plaintiff suffers from migraine headaches.[6]  [AR 328, 1016]  According to Plaintiff, she has always suffered from migraines and neck pain.  [AR 692, 1154]  Notes from December 30, 2020 indicate that Plaintiff was experiencing migraines with light and sound sensitivity [AR 740] though notes from October 14, 2021 state that Plaintiff had not had any new headaches [AR 851].  Records from October 4, 2022 indicate that Plaintiff was having increased migraines with weather changes [AR 643] and a note from January 30, 2023 referenced increased migraines despite topiramate [AR 1283].

During August 2023 physical therapy visits Plaintiff reported having three migraines per week.  [AR 1084, 1088]  During a September 19, 2023 medical visit

---

[4]  All references to "AR" refer to the sequentially numbered Social Security Administrative Record filed in this case.  [#15]

[5]  Plaintiff, represented by counsel, challenges only the Commissioner's treatment of Plaintiff's migraines.  Thus, the Court limits its analysis of Plaintiff's medical records to issues associated with her migraines.

[6]  Plaintiff also has ongoing brain fog.  [AR 368, 374, 1195]

Plaintiff reported head pain starting at the temple caused by fluorescent lighting. [AR 1074] Medical records from September 26, 2023 report that Plaintiff was suffering from frequent and severe headaches. [AR 918] According to a December 14, 2023 medical record, Plaintiff was having three to four migraines a week, which was better than the daily migraines she experienced prior to beginning topiramate. [AR 1154] Plaintiff described high intensity throbbing pain with light as well as noise sensitivity and nausea. [*Id.*]

Records from February 2024 indicate that Plaintiff was out of her migraine medication and was thus experiencing more headaches. [AR 927, 931] Records from an April 12, 2024 visit state that Plaintiff was experiencing headaches that she felt were different from her migraines. [AR 1324] Notes from June 5, 2024, however, note that Plaintiff had experienced some increased headaches due to medication she was taking for chronic lymphocytic leukemia but that the headaches had returned to baseline level. [AR 1313] During an October 7, 2024 medical appointment Plaintiff reported continued migraines despite Botox. [AR 1375] Plaintiff's neurologist had given her Ubrelvy and Nurtec samples and, though the Ubrelvy did not help, Plaintiff indicated that the Nurtec helped some. [*Id.*] Plaintiff also received a trigger point injection in her neck as she believed her neck pain could be a migraine trigger. [AR 1375, 1377]

### B.    Opinion Evidence[7]

On July 19, 2023, state consultative examiner Aaron Snyder, M.D. conducted a physical RFC analysis. [AR 67-69] Dr. Snyder opined that Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally kneel and crawl; and

---

[7] Once again, the Court focuses on the opinion evidence related to or referencing Plaintiff's migraines.

frequently stoop and crouch.  [AR 67-68]  Dr. Snyder further opined that Plaintiff was limited in her ability to reach overhead.  [AR 68]  Dr. Snyder also found Plaintiff needed to avoid concentrated exposure to extreme cold, noise, and vibration.  [AR 68]  On April 30, 2024, David Gillum, M.D. reached similar conclusions except that Dr. Gillum found that Plaintiff also needed to avoid concentrated exposure to fumes, odors, and gases and needed to avoid even moderate exposure to hazards.  [AR 78-81]

On August 16, 2023, state consultative examiner Cathy A. Word-Allen, Ph.D. opined that Plaintiff's mental condition was non-severe.  [AR 65]  Dr. Word-Allen concluded that Plaintiff would only have mild limitations in her ability to understand, remember or apply information; mild limitations in her ability to interact with others; mild limitations in her ability to concentrate, persist, or maintain pace; and mild limitations in her ability to adapt or manage herself.  [*Id.*]  On April 29, 2024, state consultative examiner Gayle Frommelt, Ph.D. reached the same conclusions as Dr. Word-Allen. [AR 75-76]

On June 4, 2024, Erin Wallace, LSW/SWC completed a mental impairment questionnaire in which she noted Plaintiff's brain fog and migraines.  [AR 1270-74]  Ms. Wallace opined that Plaintiff had extreme limitations in her ability to remember information and maintain pace; marked limitations in her ability to understand and apply information, concentrate, and persist; moderate limitations in her ability to adapt to the workplace and manage herself in the workplace; and none or mild limitations in her ability to interact with others.  [AR 1272]  Ms. Wallace further opined that Plaintiff would be absent from work more than four days per month and that she was not capable of working a full-time job.  [AR 1273]

On August 26, 2024, Matt Percy, M.D. completed an RFC questionnaire.  [AR 1267-69]  Amongst Plaintiff's other diagnoses, Dr. Percy noted that Plaintiff suffered from migraines which caused dizziness, fatigue, and weakness.  [AR 1267]  Dr. Percy opined that Plaintiff could sit for fifteen minutes at a time and stand for ten minutes at a time, and could stand and walk for less than two hours in a day.  [*Id.*]  He further opined that Plaintiff would need to sit in a recliner or lie down for six hours per day and would need a cane or other assistive device while engaged in standing or walking.  [*Id.*]  Dr. Percy further proffered lifting and carrying restrictions as well as restrictions on stooping, crouching, kneeling and climbing stairs.  [AR 1268]  Dr. Percy opined that Plaintiff would have a 75 percent productivity level compared to healthy individuals and would be absent from work more than four times per month.  [*Id.*]

### C.    Procedural History

Plaintiff's application for SSI was initially denied on September 5, 2023.  [AR 60]  Plaintiff requested reconsideration of this decision and on April 30, 2024, Plaintiff's application was again denied.  [AR 71]  On or about May 17, 2024, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  [AR 129-32]  A hearing was conducted before ALJ Rebecca LaRiccia on December 3, 2024, at which Plaintiff and vocational expert ("VE") Polly Peterson testified.  [AR 37-59]  Plaintiff was represented at the hearing by attorney Kahil Said.  [AR 37]

On December 17, 2024, the ALJ issued a decision denying Plaintiff benefits.  [AR 17-31]  Plaintiff timely requested a review of that decision by the Appeals Council which denied her request for review on July 1, 2025.  [AR 1-6]  Plaintiff timely filed an appeal with this Court on August 29, 2025.  [#1]

**D.     The ALJ's Decision**

The ALJ denied Plaintiff's application for SSI after evaluating the evidence pursuant to the five-step sequential evaluation process.  [AR 17-31]  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 19, 2022, the application date.  [AR 19]  At step two, the ALJ found that Plaintiff had the following severe impairments: cervical degenerative disc disease with moderate stenosis, type II diabetes, major depressive disorder, fibromyalgia, migraines, and obesity.  [AR 19-20]  At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the listed impairments in the appendix of the regulations.  [AR 20-22]

Following step three, the ALJ determined that Plaintiff retained the RFC to perform "light work"[8] but with the following limitations:

> [Plaintiff] can occasionally climb ramps and stairs, frequently stoop, crouch, occasionally kneel, crawl, occasionally reach overhead, must avoid climbing ladders, ropes, and scaffolds, and must avoid unprotected heights and dangerous moving machinery.  She must avoid concentrated exposure to extreme cold and vibration, can work in a moderate or office noise level environment or quieter, and must be allowed the use of room darkening glasses in brightly lit environments.  [Plaintiff] can understand, remember, and carry out simple and detailed instructions that can be learned in under 6 months and can sustain concentration, persistence, or pace to these simple and detailed instructions for 2-hour intervals with normal breaks.

[AR 22-23]  The ALJ provided a narrative setting forth the evidence considered in determining the RFC and explaining the ALJ's consideration of the medical opinions in the record.  [AR 23-29]

---

[8] Light work is defined to include work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and that "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).

At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work.  [AR 29-30]  Finally, at step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  [AR 30-31]  Specifically, the ALJ agreed with the VE's testimony opining that Plaintiff could perform the following representative occupations: small parts assembler, routing clerk, and mail clerk.  [AR 31]  Accordingly, the ALJ determined that Plaintiff was not under a disability from September 19, 2022 through December 17, 2024 (the date of the ALJ's decision).  [*Id.*]

## III.   ANALYSIS

Plaintiff claims that the ALJ failed to properly evaluate Plaintiff's migraines at step three.  [#16 at 6-14]  First, Plaintiff argues that the ALJ gave an insufficient explanation for her conclusion that Plaintiff's migraines did not equal Listing 11.02.  [*Id.* at 6-9]  Second, Plaintiff argues that the ALJ failed to identify any inconsistencies between Plaintiff's statements about her migraines and the record as a whole.  [*Id.* at 10-14]  The Court addresses each in turn.

### A.   The ALJ's conclusion that Plaintiff's migraines did not satisfy a Listing

As noted above, at step three the Commissioner must determine whether any of the claimant's severe impairments meets or medically exceeds the severity of one of the listed impairments in the appendix of the regulations ("the Listings").  *See* 20 C.F.R. § 416.920(a)(4); *Grogan*, 399 F.3d at 1261; *Bailey*, 250 F. Supp. 3d at 784.  To meet a Listing, the claimant's impairment must "satisf[y] all of the criteria of that listing, including any relevant criteria in the introduction, and meet[] the duration requirement."  20 C.F.R.

§ 416.925(c)(3).  The claimant bears the burden of demonstrating that her impairment meets or equals the requirements of a listed impairment, *Fischer-Ross v. Barnhart*, 431 F.3d 729, 732 (10th Cir. 2005), but it is nevertheless "the responsibility of the ALJ to articulate the specific reasons for finding that the listing has not been met, including a discussion of the uncontroverted evidence that supports the claimant's application for benefits, and the significantly probative evidence that he or she rejects," *Howarth v. Berryhill*, No. 3:16-CV-1844 (JCH), 2017 WL 6527432, at *8 (D. Conn. Dec. 21, 2017) (quotation omitted)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

According to Plaintiff, the ALJ failed to give an adequate explanation for her conclusion that Plaintiff failed to satisfy Listing 11.02, epilepsy.  [#16 at 6-9]  Listing 11.02 contains four possible types of seizures that could be satisfied to meet the Listing. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.02.  Plaintiff contends that there was substantial evidence to support a finding of dyscognitive seizures, Listing 11.02B.  [#16 at 8]  That Listing requires a showing of dyscognitive seizures, occurring at least once a week for at least three months despite adherence to prescribed treatment.  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.02.  "Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control."  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.00H1b.  "During the seizure, blank staring, change of facial expression, and automatisms . . . may occur."  *Id.*

There is no specific Listing for migraine headaches and the Commissioner "has determined that a claimant's impairment based on headaches equaling the criteria for epilepsy will be 'uncommon.'"  *D.M.M. v. Bisignano*, No. 24-cv-02293-TPO, 2025 WL 2793063, at *6 (D. Colo. Sept. 25, 2025)  (citing *R.L.M. v. Kijakazi*, No. 22-cv-03179-

NYW, 2023 WL 8355963, at *5 (D. Colo. Dec. 1, 2023)); *see also* SSR 19-4P, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019).  The most similar Listing for equivalency is the one cited by Plaintiff, Listing 11.02.  *Id.*; *Heather B. v. Bisignano*, No. 24-2434-JWL, 2025 WL 1953527, at *8 (D. Kan. July 16, 2025).  But "Plaintiff bears the burden of producing evidence supporting equivalency."  *D.M.M.*, 2025 WL 2793063, at *6 (citing *D.M.M*, 2023 WL 8355963); *see also Heather B.*, 2025 WL 1953527, at *10.  Here, Plaintiff has not pointed to any evidence that she had periods of altered consciousness during her seizures, which is a requirement for dyscognitive seizures.  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.00H1b.  Instead, Plaintiff merely argues that her seizures: (1) were described as a high intensity throbbing pain with associated light/noise sensitivity and nausea; (2) lasted for "hours" or until she went to sleep; (3) would be so debilitating that she could not get out of bed; and (4) forced Plaintiff to lie down in a darkened room with low sound and a cold pack on her forehead.  [#16 at 8]  But these assertions do not demonstrate that the migraines caused an altered consciousness, nor is there any evidence of such in the record.  Thus, absent some evidence of Plaintiff's migraines causing an alteration of consciousness, the Court cannot fault the ALJ for not giving a more detailed analysis of Plaintiff's headaches at step three, and the ALJ certainly did not err in concluding that Plaintiff's headaches did not meet the criteria for Listing 11.02.  *D.M.M.*, 2025 WL 2793063, at *7.

**B.     The ALJ's analysis of Plaintiff's testimony**

Plaintiff next argues that the ALJ erred in concluding that Plaintiff's statements about her headaches were not supported by the medical evidence.  [#16 at 10-14] Plaintiff frames this as a step three error but, again, Plaintiff's challenge to the ALJ's treatment of Plaintiff's migraines at step three fails because there is no evidence that

Plaintiff's migraines caused an alteration of consciousness. Nonetheless, the Court will address whether the ALJ properly evaluated Plaintiff's testimony about her symptoms.

As noted above, at step four, the Commissioner must determine whether the claimant's RFC—the functional capacity the claimant retains despite her impairments—is sufficient to allow the claimant to perform her past relevant work, if any. *See* 20 C.F.R. §§ 404.1520(a)(4); *Grogan*, 399 F.3d at 1261; *Bailey*, 250 F. Supp. 3d at 784. "The RFC must reflect an assessment of both severe and non-severe impairments and where there are subjective symptoms . . . the ALJ must address whether and how the claimant's [symptoms] affects his/her 'capacity to work.'" *Brozovich v. Colvin*, No. 14-cv-03436-MSK, 2016 WL 3900685, at *4 (D. Colo. July 19, 2016) (quoting 20 C.F.R. §§ 404.1529). In doing so, the ALJ must apply a "specified analytical rubric" under Social Security Ruling ("SSR") 16-3p.[9] *Id.* at *4; *see also* SSR 16-3p, 2016 WL 1119029, at *3 (S.S.A. Mar. 16, 2016).

SSR 16-3p dictates a two-step process for the ALJ to evaluate an individual's symptoms. *Mirabal*, 2016 WL 8230702, at *4 (citing SSR 16-3p, 2016 WL 1119029, at *3; 20 C.F.R. §§ 404.1529(b)-(c); 416.929(b)-(c)). First, the ALJ determines whether the claimant has a medically determinable impairment ("MDI")—an "impairment that

---

[9] SSR 16-3p superseded SSR 96-7p by "eliminating the use of the term 'credibility,'" in the Ruling language, in order to "clarify that subjective symptom evaluation" is not a character evaluation. *Parker v. Berryhill*, No. 16-cv-2378-WJM, 2017 WL 3315625, at *4 n.7 (D. Colo. Aug. 3, 2017) (quoting SSR 16-3p, 81 Fed. Reg. 14166, 14167 (Mar. 28, 2016)). "ALJ[]s are now instructed to consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and to evaluate whether the statements are consistent with objective medical evidence and other evidence in the record." *Id.*; *see also* SSR 16-3p, 2016 WL 1119029, at *4 (S.S.A. Mar. 16, 2016). Nonetheless, courts have noted that the analysis under SSR 16-3p and SSR 96-7p is very similar. *See, e.g., Wagner v. Berryhill*, No. CIV-16-154-CG, 2017 WL 3981147, at *8 (W.D. Okla. Sept. 11, 2017); *Mirabal v. Colvin*, 1:15-cv-00869-LF, 2016 WL 8230702, at *5 n.6 (D.N.M. Dec. 30, 2016).

13

could reasonably be expected to produce the alleged disabling [symptoms]." *Id.* (citing SSR 16-3p, 2016 WL 1119029, at *3; *Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004)). Second, the ALJ considers the claimant's "statements about the intensity, persistence, and limiting effects of symptoms," and evaluates whether those statements "are consistent with objective medical evidence and other evidence in the record." *Parker*, 2017 WL 3315625, at *4 n.7; *see also Brozovich*, 2016 WL 3900685, at *4; SSR 16-3p, 2016 WL 1119029, at *4. As part of that analysis, the ALJ should consider the following factors:

(i)     Daily activities;
(ii)    The location, duration, frequency, and intensity of pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
(v)     Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
(vi)    Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii)   Other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7.

Here, as Plaintiff notes, the ALJ provided a summary of Plaintiff's testimony concerning her migraines. [#16 at 10 (citing AR 23)] The ALJ then provided four reasons for concluding that the medical evidence "does not support the degree of deficit alleged." [AR 24] Specifically, the ALJ noted: (1) mild examination findings and deficits, (2) improvement with treatment, (3) conservative treatment, and (4) Plaintiff's daily activities. [AR 24, 26] Plaintiff argues that these reasons are insufficient for not fully crediting Plaintiff's testimony about the limiting effects of her symptoms. [#16 at 11-13]

14

With respect to the ALJ's reliance on Plaintiff's mild examination findings and deficits, Plaintiff points to caselaw stating that there is generally no objective testing for migraines, and therefore the lack of such findings should not undercut Plaintiff's testimony. [*Id.* at 11 (citing *B.A.B. v. O'Malley*, No. 1:22-cv-03064-SBP, 2024 WL 4346379, at *11 (D. Colo. Sept. 30, 2024); *Malik v. Colvin*, No. 12-cv-02932, 2014 WL 1257070, at *5 (D. Colo. Mar. 27, 2014))] But it is not clear that the ALJ discounted Plaintiff's description of the limiting effect of her migraines based upon the examination findings and deficits. Rather, the ALJ made this statement as the reason for discounting Plaintiff's testimony about the combined effects of impairments on her ability to work. And that is exactly what the ALJ is required to do. *Brozovich*, 2016 WL 3900685, at *4.

Next, Plaintiff argues that it was improper for the ALJ to rely upon Plaintiff's improvement in symptoms as any such improvement was short-lived. [#16 at 11-12] But substantial evidence supports the ALJ's conclusion. As outlined above, a December 14, 2023 medical record indicates that Plaintiff was having fewer migraines since she began taking topiramate. [AR 1154] Her headaches had increased in February 2024 but the records indicate that this was because Plaintiff was out of her medication. [AR 927, 931] And records from an April 12, 2024 visit state that Plaintiff was experiencing headaches that felt different from her migraines [AR 1324], but later records note that this may have been the result of medications she was taking for chronic lymphocytic leukemia and that her headaches had returned to baseline level [AR 1313]. And though October 7, 2024 medical records do indicate that Plaintiff's migraines continued despite Botox, they also indicate that Nurtec samples from her neurologist had helped some. [AR 1375] So substantial evidence did support the ALJ's

15

conclusion that Plaintiff's migraines had seen some improvement with medication.  And the ALJ did not completely discount Plaintiff's testimony about the effects of her migraine symptoms or dispute that Plaintiff continued having migraines—she simply concluded that Plaintiff was not as limited as she testified.  [AR 26]

Next, Plaintiff alleges that the ALJ erred in finding that Plaintiff's treatment was conservative.  [#16 at 12-13]  According to Plaintiff, the only treatment the ALJ considered was Plaintiff's Botox treatment.  [*Id.* at 12 (citing AR 26)]  But while that is the only specific treatment mentioned in the ALJ's opinion with respect to Plaintiff's migraines, the opinion provides significant detail about Plaintiff's medical history and treatment.  And "[i]t is well-settled that an 'ALJ is not required to discuss every piece of evidence' [and thus] the fact that the ALJ did not cite to every medical record in support of [her] conclusion does not require reversal."  *Newland v. Saul*, #4:19-cv-00095-PK, 2020 WL 4904082, at *4 (D. Utah Aug. 19, 2020) (quoting *Clifton*, 79 F.3d at 1009-10). Moreover, the ALJ's conclusion that Plaintiff's treatment of her migraines was conservative is supported by substantial evidence.  It is true that Plaintiff did see a neurologist who provided Plaintiff with Botox and gave Plaintiff trial samples of Ubrelvy and Nurtec.  [#16 at 12 (citing AR 1149, 1154, 1375)]  But her treatment with the neurologist does appear to be fairly limited.  And, though Plaintiff indicated that the Nurtec helped, it does not appear that Plaintiff sought a prescription for the drug.  [AR 1375]  Thus, while an argument can be made that Plaintiff did seek fairly extensive treatment for her migraines, a counterargument can also be made.  And this Court may not "reweigh the evidence or substitute [its] judgment for the Commissioner's."  *Hackett*, 395 F.3d at 1172.

16

Finally, Plaintiff argues that the ALJ should not have discounted her description of the limiting effect of her daily symptoms based upon her daily activities.  [#16 at 13] According to Plaintiff, she never claimed that she was limited at all times based upon her migraines, but only limited when experiencing a migraine.  But the Tenth Circuit has specifically held that an ALJ may consider a claimant's daily activities when evaluating the claimant's description of the limiting effects of her migraines.  *Giuliano v. Colvin*, 577 F. App'x 859, 863 (10th Cir. 2014).  And the Court finds no error in the ALJ doing so here.

Thus, the Court finds that the ALJ properly considered the factors set forth in the regulations in assessing Plaintiff's subjective description of the limiting effects of her migraines.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  *Lax*, 489 F.3d at 1084 (quotation omitted).  And though the Court may have reached a different conclusion, that does not require reversal of the ALJ's decision.  *Hackett*, 395 F.3d at 1172; *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) ("[S]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence . . . .  [C]ommon sense, not technical perfection, is [the Court's] guide."  (quotations and citation omitted)).

## IV.    CONCLUSION

Accordingly, for the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision that Plaintiff was not under a disability within the meaning of the SSA from September 19, 2022 through December 17, 2024.

DATED:  April 30, 2026

BY THE COURT:

s/Scott T. Varholak
Chief United States Magistrate Judge